12-4836-cr
United States of America v. Jason Dantley Davis

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 2nd day of April, two thousand fourteen.

Present:    ROBERT A. KATZMANN,
                        *Chief Judge*,
               DEBRA ANN LIVINGSTON,
                        *Circuit Judge*,
               ANDREW L. CARTER, JR.[*]
                        *District Judge.*

---

UNITED STATES OF AMERICA

                        *Appellee*,


                        - v -                             No. 12-4836-cr

JASON DANTLEY DAVIS, AKA Handsome,

                        *Defendant-Appellant,*

MYRON ORLANDO HENRY, JOSEPH
MARCELL RAY,

                        *Defendants.*

---

[*]Judge Andrew L. Carter, Jr., of the United States District Court for the Southern District of New York, sitting by designation.

For Appellee:                        Robert M. Spector and Sandra S. Glover, Assistant United States Attorneys, *for* Deirdre M. Daly, Acting United States Attorney for the District of Connecticut, New Haven, C.T.

For Defendant-Appellant:             Frank J. Riccio, II, Law Office of Frank J. Riccio, LLC, Bridgeport, C.T.

Appeal from the United States District Court for the District of Connecticut (Thompson, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,**

and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Defendant-Appellant Jason Dantley Davis appeals from a November 26, 2012 amended judgment imposed by the United States District Court for the District of Connecticut (Thompson, *J.*) after he was convicted by a jury of one count of possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

This proceeding is the second appeal arising from Davis's instant conviction. Davis previously appealed a 240-month sentence imposed by the district court in 2008, which was remanded in response to this Court's intervening decision in *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008). On remand, the district court considered the impact of both *Savage* and the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372, and imposed a 112-month sentence of imprisonment on Davis. Davis now appeals this second sentence. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

On appeal, Davis first contends that the district court erred in designating him as a career offender on two grounds: (1) that one of his two qualifying convictions—assault in the second degree—is not categorically a crime of violence within the meaning of the United States

2

Sentencing Guidelines ("Guidelines" or "U.S.S.G."), and (2) that this conviction should not have been considered as a qualifying conviction upon resentencing because doing so exceeded the scope of the remand ordered by this Court.

Davis contests the district court's conclusion that assault in the second degree under Connecticut General Statute § 53a-60 is a crime of violence within the meaning of U.S.S.G. § 4B1.2(a) because he asserts that the statute of conviction is over-inclusive—that is, it includes both violent and non-violent felonies. Since the statute of conviction includes non-violent felonies, he argues, the district court was not entitled to assume that Davis's conviction was based on the sections of the statute that penalize violent felonies. Even assuming *arguendo* that Davis is correct that convictions under Connecticut General Statute § 53a-60 cannot be considered categorically to be crimes of violence, the district court did not analyze the statute categorically. Rather, it properly applied the modified categorical approach to determine that Davis's conviction constitutes a crime of violence. To determine whether Davis pleaded to a subsection that criminalizes reckless or intentional conduct, the district court relied upon a transcript of the plea colloquy, which shows that Davis admitted that he had intentionally physically assaulted the victim by striking the victim in the back of the head with a glass bottle. We see no basis for questioning the district court's determination that the assault conviction was based on one of the subsections that penalizes intentional assault, and that the conviction is therefore a crime of violence.

Davis next argues that, even if his second-degree assault conviction was a crime of violence, the district court committed procedural error in relying on this conviction as a career offender qualifier because, at his first sentencing, the government had neither relied on it nor introduced into evidence the transcript of the guilty plea colloquy underlying that conviction. In

Davis's view, consideration of this prior offense was not within the scope of this court's prior remand, which directed the court only to reconsider Davis's sentence "in light of *Savage*," *United States v. Davis*, 363 F.App'x 781, 786 (2d. Cir. 2010), and so the district court's consideration of an additional prior conviction to support a finding that he is career offender violates the mandate rule.

Under the mandate rule, when a case is remanded for resentencing on a particular issue, the parties generally may not raise issues that had not previously been raised. *See United States v. Malki*, 718 F.3d 178, 182 (2d Cir. 2013) (per curiam) ("[T]he 'default rule' is that the remand is for limited, and not *de novo*, resentencing."). However, this "presumption of limited resentencing may be overcome if issues 'bec[o]me relevant only after the initial appellate review . . . .'" *Id*. (quoting *United States v. Hernandez*, 604 F.3d 48, 54 (2d Cir. 2010)); *see also United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002) ("[T]he district court may consider issues made newly relevant by the court of appeals' decision-whether by the reasoning or by the result[.]" (internal quotation marks omitted)).

Here, in his initial sentencing, Davis did not dispute that he was a career offender, so the government had no need to rely upon the assault conviction or introduce the transcript from Davis's plea colloquy. It was not until *Savage* undermined the district court's reliance on one of Davis's prior convictions that the prior assault conviction became relevant. Given the government's lack of incentive to litigate this issue at the original sentencing, its failure to raise it at that point cannot be viewed as a waiver. *See Quintieri*, 306 F.3d at 1230 ("[A] failure to make an argument at the original sentencing cannot be viewed as a waiver if that argument would have then been purely academic[.]" (internal quotation marks omitted)). Nor was the introduction of the plea colloquy transcript erroneous, as the district court may admit new

4

evidence on remand "where special circumstances make the prohibition on new evidence unfair." *United States v. Archer*, 671 F.3d 149, 168 (2d Cir. 2011). As the procedural history of this case makes clear, this is not a situation in which the government initially failed to carry its burdens of production and persuasion and simply wants "a second bite at the apple." *See id.* (quoting *United States v. Leonzo*, 50 F.3d 1086, 1088 (D.C. Cir. 1995)). Consequently, the fairness concerns animating *Archer* are not present here. Moreover, the government included the plea transcript in its sentencing memorandum on remand, giving Davis an opportunity to respond in his own defense. Given the facts of this case, we see no error in the district court's consideration of Davis's assault conviction in finding that he qualifies as a career offender.

Second, Davis argues that the district court erred in applying the "second offender" sentencing enhancement pursuant to 21 U.S.C. §§ 841(b)(1)(C), 851, based on his 1999 conviction for drug possession. Because Connecticut General Statute § 21a-279(a) penalizes the possession of some drugs that are not covered by 21 U.S.C. § 841(b)(1)(C), the district court analyzed Davis's 1999 conviction using the modified categorical approach, looking to the transcript from the plea colloquy to determine that Davis was convicted for possession of crack cocaine, which constitutes a "felony drug offense" under 21 U.S.C. § 841(b)(1)(C). *See United States v. Jackson*, 59 F.3d 1421, 1422 (2d Cir. 1995) (per curiam) (reaffirming that crack cocaine triggers the enhanced penalty provisions under 21 U.S.C. § 841(b)(1)).

Challenging this finding on appeal, Davis contends that the district court erred by concluding that his earlier conviction was a controlled substance offense based on his plea because he recalls entering that plea under the *Alford* doctrine.[1] Relying on this Court's

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.")

5

statement that "an *Alford* plea . . . does not confirm the factual basis for the plea," *Savage*, 542 U.S. at 962, he argues that the plea he "recalls" entering under *Alford* cannot serve as proof that his prior conviction involved crack cocaine. But, as he recognizes, the transcript does not give any indication that Davis entered a plea of guilty under the *Alford* doctrine. On the contrary, it shows that Davis pleaded guilty without any qualification, and specifically agreed that the facts, as summarized by the prosecutor, were correct. Thus, there is no basis to find that the district court erred, much less clearly erred, in concluding that the guilty plea confirmed the factual basis for Davis's plea. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) (explaining that, in applying the clear error standard, we must accept the district court's factual findings if they are "plausible in light of the record viewed in its entirety"(internal quotation marks omitted)).

Furthermore, Davis argues that "his statements made to the Court cannot constitute an admission sufficient to satisfy the Court that such a conviction would apply for 851 purposes." Brief for Defendant-Appellant at 17. However, in its factual proffer, the prosecution explained that Davis's conviction was based on an incident in which the police:

> observed defendant drop a folded napkin to the ground. When the item hit the pavement it opened and a small plastic bag containing a white rock-like substance fell out of it. Police believed it to be crack cocaine. They seized it; they Val-tox tested it; it did give a positive reaction for cocaine.

J.A. 116-17. When asked directly if the facts summarized were correct, Davis replied "yeah." *Id.* 122. Thus, there is no reason to conclude that the admission in the plea colloquy is insufficient to establish that the narcotic underlying the conviction was crack cocaine, which triggers the enhanced penalty provisions under 21 U.S.C. § 841(b)(1), s*ee Jackson*, 59 F.3d at

6

1422, or to conclude that the district court erred in determining that the admissions in the transcript were sufficient to designate Davis as a second offender, *see Anderson*, 470 U.S. at 574.

Finally, Davis contends that the district court abused its discretion by imposing a substantively unreasonable sentence under the factors set forth in 18 U.S.C. § 3553(a). Specifically, he argues that the district court did not consider his post-conviction rehabilitation and the disparity in the Guidelines' recommended sentences for possession of crack cocaine versus possession of powder cocaine.

This assertion is, however, belied by the record. The district court imposed a sentence of 112 months, which is less than half of the 262-month minimum term of imprisonment recommended by the Guidelines. Before imposing this sentence, the district court went to great lengths to make sure that the relevant factors—in particular the defendant's post-conviction rehabilitation—were incorporated into the Probation Office's recommendation as well as its own determination. At the sentencing hearing, the district court made it clear that it recognized that Davis was a very different than he was at the initial sentencing in 2008, concluding that, because of Davis's rehabilitation, it no longer viewed Davis as the "type of individual for whom being classified as a career offender is consistent with the purposes of sentencing." J.A. 235. However, the district court also explained that the need for just punishment and general deterrence remained since "[Davis] is in Criminal History Category VI . . . even taking into account the defendant's explanation for certain offenses." *Id*. 233. Thus, the transcript makes clear that the district court considered Davis's post-conviction rehabilitation and reduced his sentence accordingly.

Davis's argument that the district court did not properly consider the disparity between sentences for powder cocaine and those for crack cocaine is equally meritless. To be sure, we

7

have allowed district courts to "impose a lighter sentence" if "the disparity between cocaine base and cocaine powder offenses in the United States Sentencing Guidelines might result in a sentence greater than necessary." *United States v. Keller*, 539 F.3d 97, 98, 101 (2d Cir. 2008) (brackets and internal quotation marks omitted). While we require that "[t]he record . . . unambiguously demonstrate that the District Court was aware of its discretion to consider [the potentially undue disparity]," we have not insisted that district courts reduce sentences on that basis and have specifically disavowed imposing "formulaic requirements"on or requiring "robotic incantations" of district courts in administering this duty. *Id.* at 98, 101 (internal quotation marks omitted).

In sentencing Davis, the district court clearly and explicitly recognized its authority to take the disparity between sentences for powder cocaine and crack cocaine into account, but simply declined to further reduce Davis's sentence on that basis. That is all that is required. Accordingly, we reject Davis's substantive unreasonableness challenge to his sentence.

We have considered the parties' remaining arguments and we find them to be without merit. For the reasons stated herein, the judgment imposed by the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

8