18-2187-cr
*United States v. Covington*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of January, two thousand twenty.

PRESENT:

AMALYA L. KEARSE,
SUSAN L. CARNEY,
JOSEPH F. BIANCO,
          *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

          *Appellee,*

          v.                                                              No. 18-2187

TERRY COVINGTON,

          *Defendant-Appellant.*

_____

FOR APPELLEE:                          GILLIAN GROSSMAN, Assistant United
                                       States Attorney (Daniel B. Tehrani,
                                       Assistant United States Attorney*, on the
                                       brief*), *for* Geoffrey S. Berman, United
                                       States Attorney for the Southern District
                                       of New York, New York, NY.

FOR DEFENDANT-APPELLANT:            DONNA R. NEWMAN, Law Offices of
                                   Donna R. Newman, PA, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Briccetti, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on July 12, 2018, is **AFFIRMED**.

Defendant-Appellant Terry Covington ("Covington") appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York (Briccetti, *J.*), following a six-day jury trial. In January 2018, a jury convicted Covington of conspiracy to distribute quantities of crack cocaine and of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). On July 11, 2018, the District Court sentenced Covington principally to 60 months' imprisonment. On appeal, Covington argues that (i) the District Court improperly allowed the government to present expert testimony at trial; and (ii) his sentence is procedurally unreasonable. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm the District Court's judgment.

The following statement of facts is taken from the trial testimony and presented, as we must consider it on appeal after conviction, in the light most favorable to the government. In October 2015, Covington met Juan Montero ("Montero") in Liberty, New York. Montero, who had recently been released from prison, supported himself by drug-dealing. During their meeting, Montero asked Covington to supply him with crack cocaine and heroin for resale to Montero's customers, and by late 2015, Covington began providing Montero with crack cocaine.

To avoid detection by law enforcement, Covington and Montero agreed to use coded language when interacting by phone and by text messages. In particular, they agreed to refer to crack cocaine using marijuana terminology, since crimes involving marijuana carry less severe penalties than those involving crack cocaine. They agreed, for example, that they

2

would refer to crack cocaine as "gorilla glue" and "animal cookies" (both, slang for marijuana); for quantities, they would use "8th" or "8t" (shorthand references to an eighth of an ounce of marijuana). App'x at 66-67. Covington also supplied Montero with heroin for resale on two occasions in 2016 (one in January and one in February). They used coded language in discussing the heroin transactions as well.

At trial, the government relied primarily on Montero's testimony (as a cooperating witness), wiretap evidence, phone records, and the expert testimony of Investigator Timothy Dymond ("Dymond"). In addition to conducting vigorous cross-examinations, Covington introduced transcripts of communications intercepted on the wiretap of Montero's phone and argued that they showed that Montero lied about their agreement to use code words to refer to crack cocaine and heroin, and claimed that he did not supply Montero with crack cocaine or heroin for resale.

On January 24, 2018, the jury found Covington guilty of conspiracy to distribute quantities of crack cocaine and of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). The District Court sentenced Covington to 60 months' imprisonment, to be followed by three years of supervised release, and ordered him to pay a $100 mandatory special assessment. This appeal followed.

## I.    Expert Testimony

Covington challenges the District Court's admission of Dymond's expert testimony, arguing that it did not address topics outside the ken of the average juror, focusing on the admission of Dymond's testimony about the use of spoken code for financial arrangements in drug transactions (such as consignment agreements, the appearance, consumption and methods of using illegal drugs, and the packaging, quantities and prices of those drugs). Covington also argues that the bulk of Dymond's testimony was impermissible bolstering because it paralleled that of the government's only fact witness, Montero. *United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992) (expert testimony "cannot be used solely to bolster the credibility of the government's fact-witnesses by mirroring their version of events.")

3

Because Covington did not raise these arguments below, we review the District Court's ruling only for plain error. *See United States v. James*, 712 F.3d 79, 96 (2d Cir. 2013). An error is "plain" if "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Vilar*, 729 F.3d 62, 70 (2d Cir. 2013).

Testimony as to uses of code and financial arrangements in drug transactions is often admitted in the ordinary course of trials for drug distribution crimes. *See, e.g.*, *United States v. Tapia-Ortiz*, 23 F.3d 738, 741 (2d Cir. 1994) ("Testimony about the weight, purity, dosages, and prices of cocaine clearly relates to knowledge beyond the ken of the average juror."); *United States v. Taylor*, 18 F.3d 55, 60 (2d Cir. 1994) (The expert witness's "testimony was helpful because the amount of heroin for personal use is hopefully not something within the ken of an average juror."). Further, it is well established that expert testimony "may be used on some occasions to explain even non-esoteric matters, when the defense seeks to discredit the government's version of events as improbable criminal behavior," *Tapia-Ortiz*, 23 F. 3d at 741 (internal quotation marks omitted). Here, the defense repeatedly argued that Montero's version of events was improbable. It was thus permissible for Dymond to give testimony that indicated it was not unusual for drug traffickers to act in the manner testified to by Montero. Accordingly, Covington's challenge to the admission of Dymond's expert testimony fails, for we see no error, much less "plain error."

## II.     Sentence

This Court applies "a particularly deferential form of abuse-of-discretion review" on appeals relating to sentencing. *United States v. Cavera*, 550 F.3d 180, 188 n.5 (2d Cir. 2008) (en banc). A district court errs procedurally when it: (1) "fails to calculate the Guidelines range"; (2) makes a mistake in its Guidelines calculation, or treats the guidelines as mandatory"; (3) "does not consider the [18 U.S.C.] § 3553(a) factors";  (4) "rests its sentence on a clearly erroneous finding of fact"; (5) "fails adequately to explain its chosen sentence"; or (6) deviates from the Guidelines range without explanation. *Id.* at 190. Here, however, both

parties acknowledge that Covington failed to properly challenge his sentence below, and thus his appeal is subject to plain-error review. *See United States v. Villafuerte*, 502 F.3d 204, 205, 207 (2d Cir. 2007).

At Covington's sentencing, the District Court found by a preponderance of the evidence that the amount of crack cocaine involved in the conspiracy was between 22.4 and 27 grams, and that the quantity of heroin involved in the conspiracy was 2.5 grams. The District Court relied on the Drug Equivalency Table ("DET") set forth in Application Note 8(D) of U.S.S.G. § 2D1.1 to convert the respective quantities of crack and heroin into their equivalent quantities of marijuana. The District Court then combined these quantities to calculate the amount that determined Covington's base offense level. Judge Briccetti explained that, according to the DET conversion rate, 22.4 grams of crack cocaine is equivalent to 79.99 kilograms of marijuana.[1] He remarked as follows on the opacity of the rationale underlying this conversion:

> I don't really know where the Sentencing Commission got these equivalency numbers. I really don't. I'd like to know, because it seems a little bizarre that they equate 1 gram of cocaine base to 3,571 grams of marijuana. Okay. That's what the guideline says. I just don't know why that number was picked . . . . [a]nd certainly members of the public who are here in the courtroom would understandably be completely clueless about this, which I think is a bad thing. I think the public ought to be able to understand sentencing, and it's really difficult to understand, I can't really explain it, but that is the number in the relevant guidelines section, so it is what it is.

App'x at 496-97. Covington points to *United States v. Kimbrough*, 552 U.S. 85 (2007), to argue that, by making these comments, the District Court "articulated a clear policy disagreement with the DET" and treated the DET-based Guidelines calculation as mandatory. Appellant's Br. at 47.

In *Kimbrough*, the Supreme Court held that a district court may impose a below-Guidelines sentence for crack cocaine offenses based on its policy disagreement with the

---

[1] Under the DET, 22.4 grams of powder cocaine is equivalent to 4,480 grams of marijuana or 4.48 kilograms.

disparity between the Guidelines' treatment of crack and powder cocaine. *Kimbrough*, 552 U.S. at 91.[2] Consistent with *Kimbrough*, this Court has "allowed district courts to 'impose a lighter sentence' if 'the disparity between cocaine base and cocaine powder offenses in the United States Sentencing Guidelines might result in a sentence greater than necessary.'" *United States v. Davis*, 561 F. App'x 50, 55 (2d Cir. 2014) (citation omitted). While this Court has required "that the record unambiguously demonstrate that the District Court was aware of its discretion to consider the potentially undue disparity, we have not insisted that district courts reduce sentences on that basis and have specifically disavowed imposing formulaic requirements on or requiring robotic incantations of district courts in administering this duty." *Id.* (internal quotation marks and alterations omitted).

We conclude that Covington's claim with regard to the procedural reasonableness of his sentence is without merit. Although the District Court lamented the opacity of the crack-to-marijuana conversion table, at no point did it express any desire to diverge from the Guidelines' comparative treatment of crack and powder cocaine. Moreover, the District Court indicated at sentencing that it did not feel obligated to follow the Guidelines. App'x at 515-16. There is "nothing in the record that suggests that the district court was unaware of *Kimbrough*'s significance as it relates to cocaine base offenses." *United States v. Moody*, 381 F. App'x 113, 116 (2d Cir. 2010). The sentencing court "is presumed to know the state of sentencing law," and "a district court's silence on the issue of the cocaine powder/crack cocaine disparity is not indicative of its approach to sentencing." *Id.*

We see no suggestion in the record that Covington made any *Kimbrough* or policy-dispute arguments to the District Court. We also note that, when the District Court announced the sentence and asked if either side knew "any legal reason why the sentence should not be imposed as stated," the parties said "no." App'x at 516-17. Accordingly, we reject Covington's challenge to his sentence.

\* \* \*

---

[2] As the government's brief points out, it is not obvious that the District Court, in discussing the DET numbers, was even expressing a policy disagreement with the crack/powder cocaine disparity in the Guidelines.

6

We have considered Covington's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk